Middluton, J.
Willard is engaged in manufacturing and selling electric storage batteries and is one of the largest of such manufacturers. The principal material used in the manufacture of storage batteries is lead, which represents from 60 to 65 per cent of the cost of the batteries. During the tax years in question the available supply of lead was limited. The price of lead increased. Willard had no control over the source of supply of lead and was forced to pay the market price. There was a well established lead market and generally accepted market prices were currently quoted.
Deliveries of lead to Willard were made approximately 45 days after purchase orders were placed. On the average, another 45 days was required to process the lead into completed batteries.
The books of account of Willard reflected the actual cost of lead. In determining the monthly value of inventory, pursuant to Sections 5385 and 5386, General Code (Section 5711.16, Revised Code), the book cost, *199 which was the actual cost, was applied to the quantities without regard to the actual market value of lead on the dates of the monthly inventories.
Willard asserted, and produced evidence in support of the assertion, that the market price of lead in 1950 and 1951 was approximately three times the 1939 price, whereas prices of commodities generally in 1950 and 1951 were approximately only twice the 1939 prices; The evidence indicated that the average market price of lead in 1939 was approximately five cents per pound. Upon the basis of these facts, Willard claimed that the “true value” of the lead in its monthly inventories for the tax years 1950 and 1951 should be considered as eleven cents per pound.
The Tax Commissioner and the Board of Tax Appeals rejected the theory advanced by Willard and refused to adjust the price of lead for the tax years below the amount which appeared on its books. It was first found that the lead did not depreciate. The controlling finding of the Board of Tax Appeals was then expressed in the single sentence: ‘ ‘ Since depreciation does not here exist, the book value of its lead, which is its cost price, must be taken as its true value for taxation. ’ ’
The “average value” of Willard’s inventory was determined by the method specified in Section 5386, General Code. The “value” of the inventory on the last business day of each month was determined by application of actual cost prices. Those monthly values were added together and the result was divided by 12 as the number of months in the tax year.
The two sections of the General Code primarily involved are Sections 5388 and 5389 (Sections 5711.22 and 5711.18, Revised Code).
Section 5388 provides in part:
“Excepting as herein otherwise provided, personal property shall be listed and assessed at seventy per *200 centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be.” (Emphasis supplied.)
Section 5389, General Code, provides in part:
“In the case of personal property used in business, the booh value thereof, if any, less book depreciation, at such time or times, shall be listed and such depreciated book value shall be taken to be the true value of such property, unless the assessor shall find that such depreciated book value is greater or less than the then ti’ue value of such property in money.” (Emphasis supplied.)
In deciding that the book value of the lead, which is its cost price, “must be taken as its true value” for taxation, the Board of Tax Appeals apparently overlooked or ignored the clause in Section 5389 introduced by the word, “unless.” The intent is clear that under Section 5388 personal property is to be listed and assessed at a percentage of its true value, and that under Section 5389 the “true value” is to be considered the same as the depreciated book value — unless the assessor shall find that the depreciated book value is greater or less than the true value. The “unless” clause in Section 5389 necessitates consideration of all competent evidence which would indicate that true value in a given instance is different from the book value as shown by the books of the taxpayer. The Tax Commissioner and the Board of Tax Appeals cannot dispose of the problem of valuation of the taxpayer’s personal property by merely saying or ruling that the book value resulting from the application of the cost price must be taken as the true value.
The undisputed evidence in this case is that the market price of lead was subject to great fluctuation from month to month during the two tax years in question. *201 Because of the time which necessarily elapsed between the date when the lead was ordered and the date when it was actually incorporatd into batteries — some two or three months — the market price of lead at the end of any month, which price was used in computing the book value, was quite different from the actual market price of lead on such date. The undisputed evidence presented by Willard indicates that if the actual market price of lead were applied to the monthly inventories the total valuation of its inventories of lead for the years 1950 and 1951 would be materially reduced. (It is claimed that such reduction would be more than $300,000 for 1950, and more than $50,000 for 1951.) Where, as in this instance, there was an established market for the commodity in question and there were recognized current market price quotations with respect thereto, such market quotations and evidence of the prices current on such market tend to establish true value. Such evidence cannot be ignored by the Tax Commissioner and the Board of Tax Appeals. It must be considered along with actual costs, as reflected upon the books of the taxpayer, and any other competent evidence.
However, we cannot approve or adopt Willard’s theory that the true value of its lead during the tax years in question was eleven cents per pound. While the increase in the price of lead may have been greater than the increase experienced with respect to some commodities, nevertheless, the actual market price of lead — what users of lead had to pay for it and did pay for it — month by month during the tax years was the best evidence of its true value. The true value of lead would not be less than current market cost merely because that cost had risen more than the cost of most commodities when related to a prewar price level.
On the other hand we cannot affirm the decision of the Board of Tax Appeals. In failing to give con *202 sideration to established current market prices, and in limiting its consideration to actual cost prices, in the determination of the true value of the lead inventory of Willard, the Board of Tax Appeals committed error.
For these reasons the cause is remanded to the Board of Tax Appeals for consideration of all competent evidence upon the subject of true value'.

Cause remanded.

Weygandt, C. J., Taet, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.